Vanessa R. Waldref
United States Attorney
Eastern District of Washington
Dan Fruchter
Tyler H.L. Tornabene
Assistant United States Attorneys
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

FILED IN THE U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

NOV 2 1 2023

SEAN F. McAVOY, CLERK
SPOKANE, WASHINGTON

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>CAROL DACAYMAT CASILLA,<br><br>Defendant. | 2:23-CR-00085-TOR<br><br>PLEA AGREEMENT |

Plaintiff, United States of America, by and through Vanessa R. Waldref, United States Attorney for the Eastern District of Washington and Dan Fruchter and Tyler H.L. Tornabene, Assistant United States Attorneys, and Defendant CAROL DACAYMAT CASILLA (hereinafter "Defendant") and Defendant's counsel, John B. McEntire, IV, agree to the following Plea Agreement:

1.     <u>Guilty Pleas and Maximum Statutory Penalties:</u>

Defendant, CAROL DACAYMAT CASILLA, agrees to plead guilty to Count 1 of the Indictment returned by the Grand Jury on July 19, 2023, charging Defendant with Wire Fraud in violation of 18 U.S.C. § 1343, a Class C felony. Defendant understands that the following potential penalties apply:

(a)     not more than a 20-year term of imprisonment;

(b)     not more than a 3-year term of supervised release;

Plea Agreement- 1 of 17

  (c) a fine not to exceed $250,000 or twice the pecuniary gain or twice the gross loss, whichever is greater;

  (d) restitution; and

  (e) a $100 special penalty assessment.

2. <u>Supervised Release</u>

Defendant understands that if Defendant violates any condition of Defendant's supervised release, the Court may revoke Defendant's term of supervised release, and require Defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on post-release supervision, up to the following terms:

  a. 5 years in prison if the offense that resulted in the term of Supervised Release is a class A felony,

  b. 3 years in prison if the offense that resulted in the term of Supervised Release is a class B felony, and/or

  c. 2 years in prison if the offense that resulted in the term of Supervised Release is a class C felony.

Accordingly, Defendant understands that if Defendant commits one or more violations of supervised release, Defendant could serve a total term of incarceration greater than the maximum sentence authorized by statute for Defendant's offense or offenses of conviction.

3. <u>The Court is Not a Party to the Agreement:</u>

The Court is not a party to this Plea Agreement and may accept or reject it. Defendant acknowledges that no promises of any type have been made to Defendant with respect to the sentence the Court will impose in this matter.

Defendant understands the following:

  a. sentencing is a matter solely within the discretion of the Court;

b. the Court is under no obligation to accept any recommendations made by the United States or Defendant;

c. the Court will obtain an independent report and sentencing recommendation from the United States Probation Office;

d. the Court may exercise its discretion to impose any sentence it deems appropriate, up to the statutory maximum penalties;

e. the Court is required to consider the applicable range set forth in the United States Sentencing Guidelines, but may depart upward or downward under certain circumstances; and

f. the Court may reject recommendations made by the United States or Defendant, and that will not be a basis for Defendant to withdraw from this Plea Agreement or Defendant's guilty plea.

4. <u>Potential Immigration Consequences of Guilty Plea</u>

If Defendant is not a citizen of the United States, Defendant understands the following:

a. pleading guilty in this case may have immigration consequences;

b. a broad range of federal crimes may result in Defendant's removal from the United States, including the offense to which Defendant is pleading guilty;

c. removal from the United States and other immigration consequences are the subject of separate proceedings; and

d. no one, including Defendant's attorney or the Court, can predict with absolute certainty the effect of a federal conviction on Defendant's immigration status.

Defendant affirms that Defendant is knowingly, intelligently, and voluntarily pleading guilty as set forth in this Plea Agreement, regardless of any immigration consequences that Defendant's guilty plea may entail.

5. <u>Waiver of Constitutional Rights:</u>

Defendant understands that by entering his pleas of guilty, Defendant is knowingly and voluntarily waiving certain constitutional rights, including:

(a) The right to a jury trial;

(b) The right to see, hear, and question the witnesses;

(c) The right to remain silent at trial;

(d) The right to testify at trial; and

(e) The right to compel witnesses to testify.

While Defendant is waiving certain constitutional rights, Defendant understands he retains the right to be assisted through the sentencing and any direct appeal of the conviction and sentence by an attorney, who will be appointed at no cost if Defendant cannot afford to hire an attorney. Defendant understands and agrees that any defense motions currently pending before the Court are mooted by this Plea Agreement, and Defendant expressly waives Defendant's right to bring any additional pretrial motions.

6. Elements of the Offense:

The parties agree that, in order to convict Defendant of Wire Fraud, in violation of 18 U.S.C. § 1343, as charged in Count 1, the United States would have to prove beyond a reasonable doubt the following elements:

- First, on or about June 17, 2020, in the Eastern District of Washington and elsewhere, Defendant CAROL DACAYMAT CASILLA knowingly and willfully engaged in a scheme and artifice to defraud Spokane Dermatology Clinic (SDC) to obtain money from SDC by means of false and fraudulent pretenses, representations, and promises, as described in Count 1 of the Indictment;

- Second, the statements made or facts omitted as part of the scheme were material; that is they had a natural tendency to influence, or were capable of influencing, SDC to part with money or property;

Plea Agreement- 4 of 17

- Third, Defendant CAROL DACAYMAT CASILLA acted with the intent to defraud; that is the intent to deceive and cheat; and
- Fourth, Defendant CAROL DACAYMAT CASILLA used, or caused to be used, an interstate wire communication as described in Count 1 to carry out or attempt to carry out an essential part of the scheme.

7. Factual Basis and Statement of Facts:

The parties stipulate and agree that the United States could prove the following facts beyond a reasonable doubt at trial, and these facts constitute an adequate factual basis for Defendant's guilty pleas. This statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts which are relevant to the guideline computation or sentencing, unless otherwise prohibited in this agreement.

*Defendant's Position Within the Companies*

Spokane Dermatology Clinic (SDC), located in the Eastern District of Washington, provides dermatological care and medical treatment to patients. As a health care provider, SDC employs numerous medical and professional staff. Premier Clinical Research (PCR), located in the Eastern District of Washington at the same location as SDC, conducts U.S. Food and Drug Administration clinical trials and other research involving SDC patients. 3rd and Sherman Plaza LLC (3rd and Sherman), located in the Eastern District of Washington in the same location as SDC and PCR, owns the building in which SDC and PCR operate. 3rd and Sherman does not employ any staff and is a corporate entity that simply owns the commercial real estate in which PCR and SDC operate.

3rd and Sherman, SDC, and PCR (collectively "the companies") are separate businesses, but are located in the same building, have common ownership, and share a number of staff and services, including bookkeeping and accounting, though the three businesses have separate bank accounts and maintain separate accounting ledgers.

Plea Agreement- 5 of 17

Between March 2020 and March 2023, Defendant was an accountant employed by SDC and responsible for accounting and bookkeeping services for the companies. Defendant began in March 2020 as a Staff Accountant, was promoted to Accounting Manager in August 2021, and was promoted again to Director of Finance in September 2022. At all times relevant to the Indictment, through her employment and role with SDC, Defendant had access to the companies' bank accounts, debit cards, payroll system, and other financial accounting records and information. While Defendant did not have check signature or purchase authority on behalf of the companies, Defendant did have access to print checks for the companies with the signature of the companies' owner pre-populated.

As an employee of SDC, and like other employees, Defendant was paid via payroll service used by SDC rather than by company check or otherwise directly from company funds, with the exception of her first paycheck in March 2020 as well as annual holiday bonus payments in 2020, 2021, and 2022, which were paid to Defendant directly via company check.

During the time period relevant to the Indictment, SDC maintained a company business checking account with account number ending in 4229 with Riverbank, which is a federally-insured financial institution, the deposits of which are insured by the Federal Deposit Insurance Commission. During the time period relevant to the Indictment, PCR maintained a company business checking account with account number ending in 7658 with Mountain West Bank, a division of Glacier Bank, which is a federally-insured financial institution, the deposits of which are insured by the Federal Deposit Insurance Commission. During the time period relevant to the Indictment, 3rd and Sherman maintained a company business checking account with account number ending in 9367 with Mountain West Bank, a division of Glacier Bank, which is a federally-insured financial institution, the deposits of which are insured by the Federal Deposit Insurance Commission.

During the time period relevant to the Indictment, SDC utilized the services of attorneys at the law firm Etter, McMahon, Laberson, Van Wert & Oreskovich (Etter McMahon).

*Defendant's Fraudulent Scheme*

Between on or about February 3, 2020 and on or about March 7, 2023, in the Eastern District of Washington, Defendant did knowingly, and with the intent to defraud, devise a scheme and plan to defraud the companies, and to obtain money and property belonging to the companies by means of materially false and fraudulent pretenses, representations and promises.

As a part of the scheme, beginning no later than on or about May 20, 2020, and continuing until at least on or about March 3, 2023, using her access to the companies' accounts, books, and checks, Defendant, without authority, caused funds to be electronically transferred from the companies' bank accounts to various bank accounts that she owned and controlled, using interstate wires.

As an additional part of the scheme, between on or about February 3, 2022 and on or about February 21, 2023, using her access to SDC's accounts Defendant regularly caused funds to be electronically transferred using interstate wires and through automated clearing house (ACH) payments from SDC's bank accounts and funds to Defendant's personal credit card accounts with Bank of America and JP Morgan Chase.

As part of the scheme, on or about June 16, 2020, Defendant created a purported fictitious bookkeeping business called "Etters Bookkeeping" in order to conceal the fraud and make it appear as though payments to Defendant in the name of "Etters Bookkeeping" were legitimate business expenses of SDC incurred for services performed by Etter McMahon.  On or about June 16, 2020, Defendant registered "Etters Bookkeeping" as a Limited Liability Company with the Washington State Secretary of State, and designated the business entity within the registry as "Casilla, Carol D. D.B.A. Etters Bookkeeping."  Defendant also created a Bank of America

Plea Agreement- 7 of 17

bank account, number ending in 9651, in the name of "Etters Bookkeeping", with herself as the sole signatory as the purported sole proprietor of Etters Bookkeeping, and with her home address as the business address for "Etters Bookkeeping."

As part of the scheme, Defendant, without authority, printed and stole company checks bearing the signature of the companies' owner, and wrote checks to herself and to "Etters Bookkeeping". Defendant then used her phone to make mobile deposits into her accounts, including her personal accounts and the fraudulent "Etters Bookkeeping" account, via the interstate wires, fraudulently converting company funds in the company bank accounts to herself.

As part of the scheme, in total, between on or about May 20, 2020 and March 3, 2023, Defendant, in the manner described above, fraudulently obtained at least $715,255.09 from the companies' funds held in the companies' bank accounts and using the interstate wires in at least 148 fraudulent transactions: (a) 38 fraudulent transfers from SDC's Riverbank account ending in 4229 transferred via mobile deposit to Defendant's personal account ending in 1845 with BECU totaling at least $134,491.44); (b) 10 fraudulent transfers from PCR's Mountain West Bank account ending in 7658 transferred via mobile deposit to Defendant's personal account ending in 1845 with BECU totaling at least $38,146.06; (c) 9 fraudulent transfers from 3rd and Sherman's Mountain West Bank account ending in 9367 transferred via mobile deposit to Defendant's personal account ending in 1845 with BECU totaling at least $38,506.40; (d) 37 fraudulent transfers from the 3rd and Sherman's Mountain West Bank account ending in 9367 transferred via ACH payment to Defendant's personal Bank of America credit card account ending in 1932 totaling at least $147,755.79; (e) 6 fraudulent transfers from SDC's bank accounts ending in Riverbank account number ending with 4229 transferred via ACH payment to Defendant's personal JP Morgan Chase credit card account ending in 0585 totaling at least $26,207.71; and (f) 48 fraudulent transfers from SDC's Riverbank account ending in 4229 transferred via mobile deposit to Defendant's "Etters Bookkeeping" account ending in 9651 with

Plea Agreement- 8 of 17

Bank of America totaling $330,147.69. These fraudulent transfers of the companies' funds to Defendant were not related to any legitimate expenses or amounts to which Defendant had any legitimate claim, and were made by Defendant using the companies' funds without proper purpose or lawful authority.

Additionally, as part of the scheme, during the time period relevant to the Indictment, Defendant CAROL DACAYMAT CASILLA, created fraudulent entries in SDC's Quickbooks accounting system in order to make it appear that payments to Defendant's "Etters Bookkeeping" account, were legitimate business expenditures of SDC incurred for legal services performed by Etter McMahon. "Etters Bookkeeping" is not a legitimate vendor for SDC. Many of these Quickbooks entries were later deleted.

On or about June 17, 2020, Defendant, for the purpose of obtaining money from SDC, and as an essential part of the scheme and artifice described above, did knowingly and with intent to defraud, transmit and cause to be transmitted by means of wire communication in interstate commerce signals and sounds, to wit: SDC Check #38615, written by Defendant to the order of "Etters Bookkeeping" in the amount of $2,314.50, electronically transmitted and deposited via mobile deposit into Defendants "Etters Bookkeeping" Bank of America account ending in 9651, resulting in an interstate wire communication from the Eastern District of Washington to a server located outside Washington.

8.  <u>The United States Agrees:</u>

    (a)  <u>To Dismiss Counts:</u>

At the time of sentencing, the United States agrees to move to dismiss Counts 2 through 46 of the Indictment.

    (b)  <u>Not to File Additional Charges:</u>

The United States Attorney's Office for the Eastern District of Washington agrees not to bring any additional charges against Defendant based upon information in its possession at the time of this Plea Agreement and arising out of Defendant's

Plea Agreement- 9 of 17

conduct involving illegal activity charged in the Indictment, unless Defendant breaches this Plea Agreement any time before sentencing.

9. United States Sentencing Guideline Calculations:

Defendant understands and acknowledges that the United States Sentencing Guidelines (hereinafter "USSG") are applicable to this case and that the Court will determine Defendant's applicable sentencing guideline range at the time of sentencing.

(a) Base Offense Level:

The parties agree and stipulate that Defendant's Base Offense Level is 7. *See* USSG § 2B1.1(a).

(b) Specific Offense Characteristics:

The parties agree and stipulate that Defendant's Base Offense Level is increased 14-levels for a loss greater than $550,000 but less than $1,500,000 pursuant to USSG § 2B1.1(b)(1)(H).

The parties further agree and stipulate that the Base Offense Level should be increased by 2 levels pursuant to USSG § 2B1.1(b)(10), because the offense conduct involved the use of sophisticated means.

The parties have no agreement whether any other specific offense characteristics are applicable. The United States and Defendant may argue for or against any adjustments and/or enhancements under the USSG noted in the Presentence Investigation Report.

(c) Aggravating Role:

The parties agree and stipulate that Defendant's offense level should be increased 2-levels pursuant to USSG § 3B1.3, on the basis that Defendant abused a position of trust and/or used a special skill that significantly facilitated the commission or concealment of the offense.

(d) Acceptance of Responsibility:

The United States will recommend that Defendant receive a three-level

Plea Agreement- 10 of 17

downward adjustment for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a-b), if Defendant does the following:

    i.    accepts this Plea Agreement;

    ii.    enters a guilty plea at the first Court hearing that takes place after the United States offers this Plea Agreement;

    iii.    demonstrates recognition and affirmative acceptance of Defendant's personal responsibility for Defendant's criminal conduct;

    iv.    provides complete and accurate information during the sentencing process; and

    v.    does not commit any obstructive conduct.

The United States and Defendant agree that at its option and on written notice to Defendant, the United States may elect not to recommend a reduction for acceptance of responsibility if, prior to the imposition of sentence, Defendant is charged with, or convicted of, any criminal offense, or if Defendant tests positive for any controlled substance.

    (f)    <u>Criminal History</u>:

The parties make no agreement on Defendant's criminal history category, which shall be determined by the Court after the Presentence Investigative Report is completed.

10.    <u>Departure</u>:

The Defendant is free to move for a departure and/or variance under 18 U.S.C. § 3553.

11.    <u>Incarceration</u>:

The United States agrees to recommend a sentence at or below the low end of the sentencing guideline range ultimately determined by the Court at the time of sentencing. Defendant may recommend any legal sentence.

12.    <u>Criminal Fine</u>:

The parties are free to make whatever recommendation concerning the imposition of a criminal fine that they believe is appropriate.

13. <u>Restitution</u>:

The parties agree restitution is required pursuant to 18 U.S.C. §§ 3663(a), 3663A, and 3664. Further, pursuant to 18 U.S.C. § 3663(a)(3) and 3663A(a)(3), the Defendant voluntarily agrees to pay the agreed upon restitution amount in exchange for the United States not bringing additional potential charges, regardless of whether counts of the Indictment dealing with such losses will be dismissed as part of this Plea Agreement. With respect to restitution, the parties agree to the following:

(a) <u>Restitution Amount</u>

The parties agree that the Court should order Defendant to pay restitution to the companies in the in the total amount of $715,255.09. The parties agree that, of that amount, $490,846.84 is owed to SDC, $38,146.06 is owed to PCR, and $186,262.19 is owed to 3rd and Sherman.

(b) <u>Payments</u>

The parties agree the Court will set a restitution payment schedule based on Defendant's financial circumstances. *See* 18 U.S.C. § 3664(f)(2), (3)(A). That being said, Defendant agrees to pay not less than 10% of Defendant's net monthly income toward Defendant's restitution obligation.

(c) <u>Treasury Offset Program and Collection</u>

Defendant understands the Treasury Offset Program (TOP) collects delinquent debts owed to federal agencies. If applicable, the TOP may take part or all of Defendant's federal tax refund, federal retirement benefits, or other federal benefits and apply these monies to Defendant's restitution obligations. *See* 26 U.S.C. § 6402(d); 31 U.S.C. § 3720A; 31 U.S.C. § 3716.

Defendant also understands the United States may, notwithstanding the Court-imposed payment schedule, pursue other avenues to ensure the restitution obligation is satisfied, including, but not limited to, garnishment of available funds, wages, or

Plea Agreement- 12 of 17

assets. *See* 18 U.S.C. §§ 3572, 3613, and 3664(m). Nothing in this acknowledgment shall be construed to limit Defendant's ability to assert any specifically identified exemptions as provided by law, except as set forth in this Plea Agreement.

        (d)    <u>Obligations, Authorizations, and Notifications</u>

The Defendant agrees to truthfully complete the Financial Disclosure Statement that will be provided by the earlier of 30 days from Defendant's signature on this plea agreement or the date of the Defendant's entry of a guilty plea, sign it under penalty of perjury and provide it to both the United States Attorney's Office and the United States Probation Office. The parties agree that Defendant's failure to timely and accurately complete and sign the Financial Disclosure Statement, and any update thereto, may, in addition to any other penalty or remedy, constitute Defendant's failure to accept responsibility under U.S.S.G §3E1.1.

Defendant expressly authorizes the United States Attorney's Office to obtain a credit report on Defendant upon the signing of this Plea Agreement. Until the fine or restitution order is paid in full, Defendant agrees to provide waivers, consents or releases requested by the United States Attorney's Office to access records to verify the financial information.

Defendant agrees to notify the Financial Litigation Unit of the United States Attorney's Office before Defendant transfers any interest in property with a value exceeding $1,000 owned directly or indirectly, individually or jointly, by Defendant, including any interest held or owned under any name, including trusts, partnerships and corporations. Further, pursuant to 18 U.S.C. § 3664(k), Defendant shall notify the court and the United States Attorney's Office within a reasonable period of time, but no later than 10 days, of any material change in Defendant's economic circumstances that might affect defendant's ability to pay restitution, including, but not limited to, new or changed employment, increases in income, inheritances, monetary gifts or any other acquisition of assets or money.

Until the fine or restitution order is paid in full, Defendant agrees to disclose all assets in which the Defendant has any interest or over which Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or third party.

Pursuant to 18 U.S.C. § 3612(b)(F) Defendant understands and agrees that until a fine or restitution order is paid in full, Defendant must notify the United States Attorney's Office of any change in the mailing address or residence address within 30 days of the change.

14.   Supervised Release:

The parties agree to recommend that the Court impose a 3-year term of supervised release. The parties are free to advocate for any special conditions they believe are appropriate.

15.   Mandatory Special Penalty Assessment:

Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington. *See* 18 U.S.C. § 3013.

16.   Payments While Incarcerated:

If Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, then Defendant agrees to earn the money to pay toward these obligations by participating in Bureau of Prisons' Inmate Financial Responsibility Program.

17.   Additional Violations of Law Can Void Plea Agreement:

The parties agree that the United States may at its option and upon written notice to Defendant, withdraw from this Plea Agreement or modify its recommendation for sentence if, before sentencing, Defendant is charged or convicted of any criminal offense whatsoever or if Defendant tests positive for any controlled substance.

18. **Waiver of Appeal**

In return for the concessions that the United States has made in this Plea Agreement, Defendant agrees to waive Defendant's right to appeal Defendant's conviction and sentence, except that Defendant retains the right to appeal the substantive reasonableness of the sentence only if the sentence imposed by the Court exceeds the high end of the sentencing guideline range as determined by the Court at the time of sentencing.

Defendant expressly waives Defendant's right to appeal any fine, term of supervised release, or restitution order imposed by the Court, except that Defendant may appeal the restitution order by the Court if the restitution order imposed by the Court exceeds $1,000,000.

Defendant expressly waives the right to file any post-conviction motion attacking Defendant's conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based on ineffective assistance of counsel arising from information not now known by Defendant and which, in the exercise of due diligence, Defendant could not know by the time the Court imposes sentence.

Nothing in this Plea Agreement shall preclude the United States from opposing any post-conviction motion for a reduction of sentence or other attack upon the conviction or sentence, including, but not limited to, writ of habeas corpus proceedings brought pursuant to 28 U.S.C. § 2255.

19. **Withdrawal or Vacatur of Defendant's Plea**

Should Defendant successfully move to withdraw from this Plea Agreement or should Defendant's conviction be set aside, vacated, reversed, or dismissed under any circumstance, then:

    a.    The United States' obligations under this Plea Agreement shall become null and void;

    b.    the United States may prosecute Defendant on all available charges;

  c. The United States may reinstate any counts that have been dismissed, have been superseded by the filing of another charging instrument, or were not charged because of this Plea Agreement; and

  d. the United States may file any new charges that would otherwise be barred by this Plea Agreement.

The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

Defendant agrees to waive any objections, motions, and/or defenses Defendant might have to the United States' decisions to seek, reinstate, or reinitiate charges if a count of conviction is withdrawn, set aside, vacated, reversed, or dismissed, including any claim that the United States has violated Double Jeopardy.

Defendant agrees not to raise any objections based on the passage of time, including but not limited to, alleged violations of any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment.

20. <u>Integration Clause:</u>

The parties acknowledge that this document constitutes the entire Plea Agreement between the parties, and no other promises, agreements, or conditions exist between the parties concerning this case's resolution. This Plea Agreement is binding only upon the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state, or local authorities. The parties agree that this agreement cannot be modified except in writing that is signed by the United States and Defendant.

<u>Approval and Signature</u>

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

Vanessa R. Waldref

Plea Agreement- 16 of 17

United States Attorney

_____  10/21/23
Dan Fruchter                 Date
Assistant United States Attorney

_____  10/21/23
Tyler H.L. Tornabene /for    Date
Assistant United States Attorney

I have read this Plea Agreement and have carefully reviewed and discussed every part of the agreements with my attorney. I understand and voluntarily enter into the Plea Agreement. Furthermore, I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. No other promise or inducements have been made to me, other than those contained in this Plea Agreement and no one has threatened or forced me in any way to enter into this Plea Agreement. I am agreeing to plead guilty because I am guilty.

_____  11/21/2023
CAROL DACAYMAT CASILLA       Date
Defendant

I have read the Plea Agreement and have discussed the contents of the agreement with my client. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties. I concur in my client's decision to plead guilty as set forth in the Plea Agreement. There is no legal reason why the Court should not accept Defendant's plea of guilty.

_____  11/21/2023
John B. McEntire, IV         Date
Attorney for Defendant

Plea Agreement- 17 of 17